UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                    CASE NO. 97-684-CR-MORENO (S)(S)(S)

                    Plaintiff,

vs.

VADIM GOUBINE
OLEG KIRILLOV,

                    Defendants.

_____/

### MOTION TO SUPPRESS IMPROPERLY OBTAINED GOVERNMENT WITNESS TESTIMONY WITH MEMORANDUM OF AUTHORITIES

**COMES NOW** the Defendant, **OLEG KIRILLOV**, by and through his undersigned attorney, and moves this Honorable Court to suppress the prospective testimony of certain informants and co-defendants in the above referenced matter on the grounds that the said testimony has been improperly induced by the government in violation of 18 U.S.C. §201(c)(2), and as grounds therefore states as follows:

1.      As part of Rule 16 discovery in the instant case, the government has indicated that it will be presenting the testimony of certain individuals that the government claims participated in criminality with the defendant. Each of these individuals has received improper specific promises and inducements by the government of substantial value in return for their forthcoming testimony.

2.      The specific witnesses known at this time whose testimony has been improperly obtained by the government for use at the trial of the defendant Kirillov are: Roman Saviliev; Fabian Fabian; Olas Victor Storcheck and, upon information and belief, Vadim Goubine.

LAW OFFICES OF
ALAN E. WEINSTEIN
1801 WEST AVENUE
MIAMI BEACH, FLA.
TEL. (305) 534-4666
FAX: (305) 534-7636

3.      As it relates to Roman Saviliev and Fabian Fabian, the government has entered into cooperation plea agreements with those individuals (Exhibits 1 and 2).  These agreements contemplate the substantial assistance, of each witness including, but not limited to, testimony. In exchange, the government has agreed, *inter alia*, "to evaluate the nature and extent of [each witnesses'] cooperation and make [such] cooperation, or lack thereof, known to the court at the time of sentencing".  (Exhibits 1 and 2 at page 4).  In addition, the government has agreed that if Saviliev's and Fabian's cooperation is, in the sole and unreviewable judgement of the United States Attorney's Office, "of such quality and significance to the investigation or prosecution of other criminal matters (a euphuism for providing testimony in this case), as to warrant the Court's downward departure from the sentence required by the Sentencing Guidelines", the government may "at or before sentencing make a motion pursuant to Section 5K1.1 of the Sentencing Guidelines, 18 U.S. Code §3553(e), or a Rule 35 motion subsequent to sentencing, reflecting that the defendant has provided substantial assistance and recommending sentence reduction".   (Exhibit 1 at page 5; Exhibit 2 at page 4).  In addition to the promises and inducements made to Saviliev and Fabian by the government in the plea agreements, the government has also agreed to offer both Fabian and Saviliev witness protection for themselves and their immediate families.  Regarding Saviliev, the government has further agreed, as an inducement to obtain his testimony, to have the DEA make an application on his behalf to the INS to obtain an "S" visa for him.

As it relates to Oles Storcheck, the government has indicated (although ostensibly making "no promises"), that they will not prosecute Storcheck for other crimes of which they have knowledge if he testifies against the defendant.  Storcheck has also been offered the witness

LAW OFFICES OF
ALAN E. WEINSTEIN
1801 WEST AVENUE
MIAMI BEACH, FLA.
TEL. (305) 534-4666
FAX: (305) 534-7636

2

*U.S. v. Kirillov*                        **Case No. 97-684-CR-MORENO (s)(s)(s)**

protection program, and it is believed that he has received other yet undisclosed promises from the government, including immigration assistance promises for himself and/or his family.

As it relates to Vadime Goubine, on information and belief, the government has entered into, although not finalized, a plea agreement similar to those entered into with Fabian and Saviliev.

4.     In addition to the foregoing promises and inducements, it is believed, on information and belief, that the government has, as part of the promises made to Fabian, Storcheck and Saviliev to obtain their testimony, agreed not to include each of the said individuals as defendants in the instant indictment. Instead, the government has allowed each of the individuals to plead to a reduced charge.

5.     The testimony of the aforesaid individuals should be suppressed in that each of the aforementioned promises made by the government, which are contingent upon each witnesses cooperation and testimony, violates 18 U.S.C. §201(c)(2).

### MEMORANDUM OF AUTHORITIES

In support of this motion, the defendant Kirillov relies on the recent Tenth Circuit decision in **United States v. Singleton**, 144 F.3d 1343 (10th Cir. 1998). While the Tenth Circuit has vacated the **Singleton** opinion and granted a rehearing *en banc* (thus obviating its precedential value), the defendant nonetheless adopts the reasoning of the **Singleton** court in its entirety. Of substantial precedential value, and of extreme importance to this court in ruling on this motion, is the recently entered order of the Honorable Williams J. Zloch, in the case of **United States of America v. Lowery**, (Case No. 97-368-CR-Zloch) . Judge Zloch's order on

LAW OFFICES OF
ALAN E. WEINSTEIN
1801 WEST AVENUE
MIAMI BEACH, FLA.
TEL. (305) 534-4666
FAX: (305) 534-7636

*U.S. v. Kirillov*                      **Case No. 97-684-CR-MORENO (s)(s)(s)**

a similar motion, entered on August 4, 1998, is adopted in its entirety and is commended to this court for its cogent and logical reasoning. A copy of Judge Zloch's opinion in the **Lowery** case is attached hereto and made a part hereof as Exhibit 3.

    **WHEREFORE,** based upon the foregoing, the defendant, OLEG KIRILLOV, requests this Honorable Court to suppress the improperly obtained government witnesses testimony, as aforesaid.

<u>**CERTIFICATE OF SERVICE**</u>

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished by U.S. Mail to Michael J. Dittoe, Assistant United States Attorney, 500 E. Broward Boulevard, Fort Lauderdale, FL 33301; David P. Rowe, Counsel for Defendant Goubine, 18800 N.W. 2nd Avenue, Miami, FL 33169, and J.C. Codias, The Four Ambassadors, 825 So. Bayshore Drive, Tower 3, Suite 1243, Miami, FL 33131, this 26th day of August, 1998.

                            Respectfully submitted,

                            LAW OFFICES OF ALAN E. WEINSTEIN
                            Attorneys for Defendant Kirillov
                            1801 West Avenue
                            Miami Beach, Florida 33139
                            (Tel) 305/534-4666; (Fax) 305/534-7636

                            By: _____
                                Alan E. Weinstein

LAW OFFICES OF
ALAN E. WEINSTEIN
1801 WEST AVENUE
MIAMI BEACH, FLA.
TEL. (305) 534-4666
FAX: (305) 534-7636

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,        CASE NO. 98-325-CR-UNGARO-BENAGES

                Plaintiff,

-vs-                                    PLEA AGREEMENT

ROMAN SAVILIEV,

                Defendant.
_____/

        The United States of America and Roman Saviliev  (hereinafter referred to as the

"defendant") enter into the following agreement:

        1.      The defendant agrees to waive indictment by grand jury and  plead guilty  to a one

count information charging the defendant with possessing cocaine with the intent to distribute it in

violation of Title 21, United States Code, Section 841.

        2.      The defendant is aware that the sentence will be imposed in conformity with the

Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"), and

that the applicable guidelines will be determined by the court relying in part on the results of a

Pre-Sentence Investigation by the court's probation office, which investigation will commence

after the guilty plea has been entered.  The defendant is also aware that, under certain

circumstances, the court may depart from the applicable guideline range and impose a sentence

that is either more severe or less severe than the guideline range.  Knowing these facts, the

defendant understands and acknowledges that the court has the authority to impose any sentence

within and up to the statutory maximum authorized by law for the offense identified in paragraph



**EXHIBIT** ____/____

1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3.      The defendant also understands and acknowledges that the court  may impose a statutory minimum sentence of 5 years (subject to the safety valve discussed below) and a maximum term of imprisonment of up to 40 years, followed by a term of supervised release.  In addition to a term of imprisonment and supervised release, the court may impose a fine of up to $4,000,000 and may order restitution.

4.      The United States and the defendant agree that, although not binding on the probation office or the court, they will jointly recommend that, pursuant to Section 5C1.2 of the Sentencing Guidelines,  the court impose a sentence within the sentencing guideline range without regard to any statutory minimum sentence identified in paragraph 4 above, provided that:

(a)      defendant is not found to have more than one criminal history point, as determined under the Sentencing Guidelines;

(b)      not later than the time of the sentencing hearing the defendant provides to the United States a written statement truthfully setting forth all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan as charged in the indictment; and

(c)      the defendant is not found to have used violence or threats of violence, or to have possessed a firearm or other dangerous weapon in connection with the offense; that the offense did not result in death or serious bodily injury to any person; and that the defendant is not found to have been an organizer, leader, manager or supervisor of others in the offense

5       The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of

2

$100 will be imposed on the defendant.

6.      The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7.      The United States agrees that it will recommend at sentencing that the court reduce by three levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. The United States further agrees to recommend that the defendant be sentenced at the low end of the guideline range determined by the court. However, the United States will not be required to make these sentencing recommendations if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making a false statement or misrepresentation to any governmental entity or official.

8.      The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that

3

the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged above, that the defendant may not withdraw his/her plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation jointly made by both the defendant and the government.

9.    The defendant agrees that defendant shall cooperate fully with this Office by:

(a)    providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding;

(b)    appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and

(c)    if requested by this Office, working in an undercover role to contact and negotiate with sources of cocaine and other controlled substances/others suspected and believed to be involved in criminal conduct, under the supervision of, and in compliance with, law enforcement officers and agents.

10.    This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's

4

cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the Court's downward departure from the sentence required by the Sentencing Guidelines, this Office may at or before sentencing make a motion pursuant to Section 5K1.1 of the Sentencing Guidelines, 18 U.S.C. §3553(e), or a Rule 35 motion subsequent to sentencing, reflecting that the defendant has provided substantial assistance and recommending sentence reduction.   The defendant acknowledges and agrees, however, that nothing in this Agreement may be construed to require this Office to file such a motion and that this Office's assessment of the nature, value, truthfulness, completeness and accuracy of the defendant's cooperation shall be binding on the defendant.

11.   The defendant understands and acknowledges that the court is under no obligation to grant a government motion pursuant to Title 18, United States Code, Section 3553(e), 5K1.1 of the Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, as referred to in this agreement, should the government exercise its discretion to file such a motion.

12.   The United States and the defendant agree that, although not binding on the probation office or the court, they will jointly recommend that the court make the following findings and conclusions as to the sentence to be imposed:

a.   Quantity of narcotics: That the quantity of controlled substance (cocaine) involved in the offense, for purpose of Section 2D1.1(a) and (c) of the Sentencing Guidelines, is at least 500 grams but less than 2 kilograms of cocaine.

13.   The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case.  Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Title 18, United States Code, Section 3742 to appeal any sentence

5

imposed, including any restitution order, or to appeal the manner in which that sentence was determined, unless (1) the sentence exceeds the maximum permitted by statute, (2) the sentence is the result of an upward departure from the guideline range the court establishes at sentencing, and/or (3) the court decides not to follow one or more of the sentencing recommendations made above.   The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b).  However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights.  The defendant understands that, although the defendant will be sentenced in conformity with the Sentencing Guidelines, by this agreement the defendant waives the right to appeal the sentence on the basis that the sentence is the result of an incorrect application of the Sentencing Guidelines.

14.  This is the entire agreement and understanding between the United States and the defendant.  There are no other agreements, promises, representations, or understandings.

THOMAS E. SCOTT
UNITED STATES ATTORNEY

Date:_____                    By:_____
                                    MICHAEL J. DITTOE
                                    ASSISTANT UNITED STATES ATTORNEY

Date:_____                     _____
                                    DANIEL H. FORMAN
                                    ATTORNEY FOR DEFENDANT

Date:_____                     _____
                                    DEFENDANT

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,                    CASE NO.98-182-CR-GRAHAM


-vs-                                         <u>PLEA AGREEMENT</u>


FABIAN FABIAN

                Defendant.
_____/

      The United States of America and Fabian Fabian (hereinafter referred to as the "defendant")

enter into the following agreement:

      1.    The defendant agrees to waive indictment, and plead guilty to an information that

charges the defendant with knowingly and intentionally possessing with the intent to distribute

cocaine in violation of Title 21, United States Code, Section 841(a)(1).

      2     The defendant is aware that the sentence will be imposed in conformity with the

Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"), and that

the applicable guidelines will be determined by the court relying in part on the results of a Pre-

Sentence Investigation by the court's probation office, which investigation will commence after the

guilty plea has been entered. The defendant is also aware that, under certain circumstances, the court

may depart from the applicable guideline range and impose a sentence that is either more severe or

less severe than the guideline range. Knowing these facts, the defendant understands and

acknowledges that the court has the authority to impose any sentence within and up to the statutory



**EXHIBIT** 2

maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3.      The defendant also understands and acknowledges that the court must impose a minimum term of imprisonment of 5 years and may impose a statutory maximum term of imprisonment of up to 40 years, followed by a term of supervised release.  In addition to a term of imprisonment and supervised release, the court may impose a fine of up to $4,000,000.

4.      The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on the defendant.

5.      The Office of the United States Attorney for the Southern District of Florida (hereinafter "Office") reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background.  Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6.      The United States agrees that it will recommend at sentencing that the court reduce by three levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. The United States further agrees to recommend that the defendant be sentenced at the low end of the guideline range determined by the court.  However, the United States will not be required to make these sentencing recommendations  if the defendant

2

(1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making a false statement or misrepresentation to any governmental entity or official

       7.     The United States and the defendant agree that, although not binding on the probation office or the court, they will jointly recommend that the court make the following findings and conclusions as to the sentence to be imposed:

       a.    <u>Quantity of narcotics</u>: That the quantity of controlled substance cocaine) involved in the offense, for purpose of Section 2D1.1(a) and (c) of the Sentencing Guidelines and is at least 500 grams but less than two kilograms.

       8.     The defendant agrees that defendant shall cooperate fully with this Office by:

      (a)     providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other court proceeding;

      (b)     appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and

      (c)     if requested by this Office, working in an undercover role to contact and negotiate with sources of cocaine and other controlled substances andothers suspected and believed to be involved in criminal conduct, under the supervision of, and in compliance with, law enforcement officers and agents.

9.      This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make the defendant's cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of this Office the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the Court's downward departure from the sentence required by the Sentencing Guidelines, this Office may at or before sentencing make a motion pursuant to Section 5K1.1 of the Sentencing Guidelines, 18 U.S.C. §3553(e), or a Rule 35 motion subsequent to sentencing, reflecting that the defendant has provided substantial assistance and recommending sentence reduction. The defendant acknowledges and agrees, however, that nothing in this Agreement may be construed to require this Office to file such a motion and that this Office's assessment of the nature, value, truthfulness, completeness and accuracy of the defendant's cooperation shall be binding on the defendant.

10.     The defendant understands and acknowledges that the court is under no obligation to grant a government motion pursuant to Title 18, United States Code, Section 3553(e), 5K1.1 of the Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, as referred to in this agreement, should the government exercise its discretion to file such a motion.

11. The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Title 18, United States Code, Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which that sentence was determined, unless (1) the sentence exceeds the maximum permitted by statute, (2) the sentence is the result of an upward departure from the guideline range the court establishes at sentencing, and/or (3) the court

4

decides not to follow one or more of the sentencing recommendations made pursuant to this plea agreement. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in 18 U.S.C. § 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. The defendant understands that, although the defendant will be sentenced in conformity with the Sentencing Guidelines, by this agreement the defendant waives the right to appeal the sentence on the basis that the sentence is the result of an incorrect application of the Sentencing Guidelines.

12.     The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged 3 above, that the defendant may not withdraw the plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation jointly made by both the defendant and the government.

13.  This is the entire agreement and understanding between the United States and the defendant.  There are no other agreements, promises, representations, or understandings.

THOMAS E. SCOTT
UNITED STATES ATTORNEY


Date:_____          By:_____
                          MICHAEL J. DITTOE
                          ASSISTANT UNITED STATES ATTORNEY


Date:_____           By:_____
                          ATTORNEY FOR DEFENDANT


Date:_____           By:_____
                          DEFENDANT

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 97-368-CR-ZLOCH

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                            O R D E R

OSLET FRANKLIN LOWERY, JR.,

        Defendant.
_____/

FILED by _____ D.C.

AUG 4 1998

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

     THIS MATTER is before the Court upon the Defendant, Oslet
Franklin Lowery, Jr.'s Motion To Suppress (DE 134). The Court
has carefully reviewed said Motion and is otherwise fully advised
in the premises.

     In the instant Motion (DE 134), the Defendant has moved to
suppress the anticipated testimony of his three co-Defendants,
Guillermo Mallarino, Jose Ignacio Forero and Danny Morino, as the
plea agreements in this matter secured such testimony in
violation of Title 18, United States Code, Section 201(c)(2). On
July 21, 1998, the Assistant United States Attorney and counsel
for Defendant Lowery presented oral argument to this Court as to
the aforementioned Motion.

     Upon careful consideration of the instant Motion and of
argument of counsel, the Court, for the reasons set forth below,
finds that the plea agreements of the aforementioned co-
Defendants in this matter violate the clear and unambiguous

EXHIBIT _____3_____

meaning of Section 201(c)(2).   Accordingly, the Court finds that the testimony of each of said co-Defendants should be suppressed.


## I.   INTRODUCTION

The Court notes that the Government of the United States consists of three separate, but equal, branches: the Executive Branch, the Legislative Branch and the Judicial Branch.   The actions complained of herein by Defendant Lowery were performed by the Executive Branch, acting through its Department of Justice.   Therefore, for the sake of clarity, throughout this Order, such actions will be noted as those of the Executive Branch.

The Defendants, Oslet Franklin Lowery, Jr., Guillermo Mallarino, Jose Ignacio Forero and Danny Morino, were charged in a four-count Indictment with conspiracy to import cocaine, conspiracy to possess cocaine with intent to distribute it, importation of cocaine and possession of cocaine with intent to distribute it.   Prior to the trial of the above-styled cause, Defendants Mallarino, Forero and Morino entered into cooperation plea agreements with the Executive Branch (DE Nos. 55, 58 and 65).   Each agreement contemplated the substantial assistance, including but not limited to truthful testimony, of each respective Defendant.   In exchange, the Executive Branch agreed

2

"to evaluate the nature and extent of [each] Defendant's cooperation and to make [such] Defendant's cooperation, or lack thereof, known to the court at the time of sentencing" (DE 55 at 5; DE 58 at 5; DE 65 at 6).  In addition, the Executive Branch agreed that if the Defendant's cooperation was of substantial assistance in the investigation and prosecution of criminal matters, the Executive Branch "may" make a motion pursuant to Title 18, United States Code, Section 3553(e), Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure.  Sections 3553(e) and 5K1.1 and Rule 35 enable a sentencing court, upon motion of the Executive Branch, to depart downward from or reduce the otherwise applicable guideline sentence.

In the instant Motion (DE 134), Defendant Lowery asserts that the testimony of co-Defendants Mallarino, Forero and Morino should be suppressed as the aforementioned promises by the Executive Branch, which are contingent upon each co-Defendant's cooperation, and more precisely, testimony, violate Title 18, United States Code, Section 201(c)(2).  In support of his position, Defendant Lowery cites the recent decision by the United States Court of Appeals for the Tenth Circuit, United States v. Singleton, 144 F.3d 1343 (10ᵗʰ Cir. 1998.  In Singleton, the Tenth Circuit concluded that the district court erred in denying the defendant's motion to suppress a witness'

3

testimony where the Executive Branch, in return for such testimony, promised something of value to the witness, including advising the sentencing court of the nature and extent of the witness' cooperation. Specifically, the court determined that the Executive Branch's promises violated the plain language of Section 201(c)(2). On July 10, 1998, the Tenth Circuit vacated the Singleton opinion and granted a rehearing en banc. Although Singleton is no longer of precedential value, the Defendant adopts in its entirety the reasoning of the Singleton court.

Conversely, it is the Executive Branch's position that the Singleton case was wrongly decided and that this Court should follow the precedent of the United States Court of Appeals for the Eleventh Circuit interpreting Section 201(c)(2). In particular, the Executive Branch asserts that first, Section 201(c)(2) does not apply to the Executive Branch; second, the Eleventh Circuit's decision in Golden Door Jewelry v. Lloyds Underwriters, 117 F.3d 1328 (11th Cir. 1997), has already decided the issue before this Court; third, the more specific provisions of the substantial assistance statutes should prevail over the more general Section 201(c)(2); fourth, it is a settled practice of the Executive Branch to engage in this type of agreement; and fifth, the aforementioned agreements do not violate the Florida Bar Rules of Professional Conduct. Noticeably absent from the Executive Branch's argument, however, is any recognition that the

4

plain language of Section 201(c)(2) should control this Court's
inquiry.

## II.   STATUTORY INTERPRETATION

In addressing the merits of the instant Motion (DE 134) as
well as the Executive Branch's objections, the Court's initial
task is to explore the pertinent rules of statutory construction.
It is a basic tenet of statutory construction that "courts in
applying criminal laws generally must follow the plain and
unambiguous meaning of the statutory language." <u>Salinas v.
United States</u>, 118 S.Ct. 469, 474 (1997).  Thus, the starting
point for interpreting a statute is naturally the "language of
the statute itself." <u>Consumer Product Safety Com. v. GTE
Sylvania, Inc.</u>, 447 U.S. 102, 108 (1980); <u>see also</u>, <u>United States
v. Kahn</u>, 415 U.S. 143, 151 (1974) (The starting point is the
"precise wording chosen by Congress."); <u>Griffin v. Oceanic
Contractors, Inc.</u>, 458 U.S. 564, 571 (1982) ("There is, of
course, no more persuasive evidence of the purpose of a statute
than the words by which the legislature undertook to give
expression to its wishes.") (internal citations omitted).  As a
general rule of statutory construction, where the terms of a
statute are unambiguous, and where the "statutory scheme is
coherent and consistent," judicial inquiry is complete.  <u>United
States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 240 (1989);

Rubin v. United States, 449 U.S. 424, 430 (1981).

Indeed, courts must presume that, when enacting a statute, the legislature says what it means and means what it says; for it is a fundamental principle that " . . . Congress legislates with knowledge of [the] basic rules of statutory construction . . . " McNary v. Haitian Refugee Center, 498 U.S. 479, 495 (1991). Having ascertained the plain meaning of a statute, it then becomes the sole function of the judiciary "to enforce [the statute] according to its terms." Ron Pair Enterprises, Inc., 489 U.S. at 241 (quoting Caminetti v. United States, 242 U.S. 470, 485 (1917)).

As the Supreme Court recognized in Deal v. United States, 508 U.S. 129, 132 (1993), the meaning of a word cannot be determined in isolation. Thus, courts must draw from the language itself, the specific context of such language and the broader context of the entire statute. Robinson v. Shell Oil Company, 117 S.Ct. 843, 846 (1997). Further, terms which are not defined within a statute "are given their ordinary or natural meaning." National Coal Association v. Chater, 81 F.3d 1077, 1081 (11th Cir. 1996) (citation omitted).

Although the legislative history of a statute is of some relevance, courts should "not resort to legislative history to cloud a statutory text that is clear." Id. at 1082 (quoting Ratzlaf v. United States, 510 U.S. 135, 147 (1994)). Nor may an

6

appeal to statutory purpose overcome the specific language of a statute, because the text is the most persuasive evidence of legislative intent. <u>Chater</u>, 81 F.3d at 1082; <u>Griffin</u>, 458 U.S. at 571.

Indeed, the plain language approach to a statute is essentially a rational approach. As the interpretive partners of Congress, the courts have a responsibility to review the text of a statute with a common-sense degree of precision in an effort to ascertain the meaning of a statute. This common-sense reliance upon the plain statutory language also helps courts avoid the danger of mistakenly substituting their will for that of the legislature. For as United States Supreme Court Justice Antonin Scalia correctly and succinctly stated in his concurrence in <u>INS v. Cardoza-Fonseca</u>, 480 U.S. 421, 452 (1987): "Judges interpret law rather than reconstruct legislators' intentions. Where the language of those laws is clear, we are not free to replace it with an unenacted legislative intent."

It is, however, a familiar rule of statutory construction that when a literal reading of a statutory term would produce an absurd result or one at odds with the whole statute, courts must look for other evidence of legislative intent in order to give the words their proper scope. <u>Rector, Etc. of Holy Trinity Church v. United States</u>, 143 U.S. 457, 459 (1892); <u>Public Citizen v. United States Department of Justice</u>, 491 U.S. 440, 454 (1989).

Guided by these principles of statutory construction, the

7

Court will now examine the plain meaning of Section 201(c)(2).

### III.   TITLE 18, UNITED STATES CODE, SECTION 201(c)(2)

Title 18, United States Code, Section 201(c)(2) provides as follows:

> (c)   Whoever -
>
> > (2)   directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, . . .
>
> shall be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c)(2).  In addressing the merits of the instant Motion, as well as the substantial concerns of the Executive Branch, the Court will analyze each separate word or phrase as necessary.

First, Section 201(c)(2) applies to "whoever."  The term "whoever" means "no matter who."  (THE AMERICAN HERITAGE DICTIONARY 1380 (2d ed. 1985).  It is the Executive Branch's position that it simply does not fall within this seemingly unlimited statutory class.  In Nardone v. United States, 302 U.S. 379, 383 (1937), the United States Supreme Court recognized a limited rule of statutory construction which provides that a statute does not apply to the Government, in this case, the Executive Branch, or affect its rights unless the text clearly and indisputably includes the Executive Branch.  This canon, however, operates to

8

exclude the Executive Branch only in two types of cases.  In the first instance, the Executive Branch is excluded where a statute "if not so limited, would deprive the [Executive Branch] of a recognized or established prerogative title or interest."  <u>Id.</u> Nevertheless, where the law operates upon the agents or servants of the Executive Branch, rather than on the Executive Branch, itself, this rule of exclusion of the Executive Branch is "less stringently applied."  <u>Id.</u>  Thus, where there is no evidence of a contrary legislative purpose, legislation, worded in general terms, is construed to apply to all persons, including public officers and agents.  <u>City of Buffalo v. Hanna Furnace Corp.</u>, 305 N.Y. 369, 374 (N.Y. 1953) (citing <u>Nardone v. United States</u>, 302 U.S. 379 (1937); <u>United States v. State of Arizona</u>, 295 U.S. 174 (1935); and <u>Dollar Sav. Bank v. United States</u>, 86 U.S. 227 (1873)).

Even assuming that the Executive Branch has a recognized or established interest in securing the cooperation of defendants, the Executive Branch cannot establish that Section 201(c)(2) operates on the <u>Executive Branch</u>, as opposed to individual federal officers.  While the Executive Branch correctly asserts that the Department of Justice acts on behalf of the Executive Branch, it is the actions solely of the agents of the Executive Branch which are at issue.  That is, Section 201(c)(2) impacts only upon the method of investigation and prosecution chosen by the agents of the Executive Branch in representing its interests.

9

Because alternative methods, which comply with Section 201(c)(2),
remain available to such agents, the Executive Branch's overall
interest in securing cooperation of defendants, or in otherwise
fighting crime, will not be impeded.  Therefore, Section
201(c)(2) in no way operates upon the Executive Branch itself.

Moreover, there is no evidence of any legislative purpose
which would release the Executive Branch from the general terms
of Section 201(c)(2).  Indeed, a careful reading of Section
201(c) as a whole easily dispels any notion that Congress
intended to exclude the Executive Branch from Section 201(c)(2).
In sharp contrast to Section 201(c)(2), Section 201(c)(1)
expressly exempts the Executive Branch from its operation.
Section 201(c)(1) applies to the same general class of "whoever,"
but then provides one important limitation: "otherwise than as
provided by law for the proper discharge of official duty . . .
. "  18 U.S.C. § 201(c)(1).  This limitation is conspicuously
absent from Section 201(c)(2).  It is well understood that "where
Congress includes particular language in one section of a statute
but omits it in another section of the same Act, it is generally
presumed that Congress acts intentionally and purposely in the
disparate inclusion or exclusion."  Bates v. United States, 118
S.Ct. 285, 290 (1997) (citing Russello v. United States, 464 U.S.
16, 23 (1983) (internal quotation omitted)).  Because Congress
clearly exempted the Executive Branch from application of Section
201(c)(1), this Court must assume that Congress knew how to do

the same in Section 201(c)(2), but intentionally chose not to do so.  Given Congress' intentional omission of an official duty exemption, it is not this Court's function to insert or insinuate such an exemption.

In the second instance where <u>Nardone</u> would exclude the Executive Branch from operation of the statute, public officers are excluded where "a reading which would include such officers would work obvious absurdity." <u>Nardone</u>, 302 U.S. at 383.  In this matter, however, inclusion of the Executive Branch and its agents hardly works an obvious absurdity.  It is elementary that testimony obtained through inducement is inherently unreliable. Nor is there any dispute that Section 201(c)(2) clearly prohibits a defendant from promising or giving a thing of value in exchange for a witness' testimony.  It is axiomatic, therefore, that if the judicial process is tainted by the admission of unreliable testimony induced by a defendant's promises, it is no less tainted by the identical actions of the prosecutor.

While the Court's finding herein may preclude the Executive Branch from securing testimony in a certain manner, it clearly does not preclude it from obtaining cooperation from an individual or from consequently rewarding such individual.  Nor does it prohibit a witness from testifying at trial or other court proceedings, either on his own initiative or under compulsion.  With this ruling, the Court simply recognizes that the dangers of permitting officers of the Executive Branch to

11

engage in bargaining for testimony are as substantial as when a defendant does the same. Where a witness, either for the Executive Branch or the defense, knows that a promise of leniency or other thing of value is inextricably intertwined with his testimony, the incentive to lie and to curry favor is tremendous. Thus, application of Section 201(c)(2) to all persons, including the prosecution, would not work an obvious absurdity, but would clearly preserve the integrity of the judicial process.

It follows then, that Section 201(c)(2) undoubtedly is intended to prevent an injury or a wrong; specifically, the perversion of the judicial process. Thus, <u>Nardone</u> instructs that the Executive Branch is included in the terms of Section 201(c)(2). <u>Nardone</u>, 302 U.S. at 384.

Moreover, the Constitutional form of Government which has guided this country for over two-hundred and twenty years demands that the Executive Branch be subject to the laws enacted by the United States Congress. At last glance, the United States was a democracy - not a monarchy. Thus, neither the United States Attorney, the Department of Justice nor the Executive Branch is above the law, but is subject to it in the same manner and to the same degree as an ordinary citizen. That is, the Executive Branch may not pick and choose which laws it will follow and which it will disregard. Accordingly, the Court finds that the Executive Branch and its agents are unquestionably subject to the provisions of Section 201(c)(2).

Second, there is no doubt that the Executive Branch is giving, offering or promising a "thing of value" to the co-Defendants in this matter.  The term "thing of value" has been broadly construed to envelop both tangibles and intangibles.  See United States v. Marmolejo, Jr., 89 F.3d 1185, 1192 (5 Cir. 1996) (citing United States v. Nilsen, 967 F.2d 539, 542 (11 Cir. 1992)).  Thus, a "thing of value" has been interpreted to include amusement, information and sexual intercourse.  Id. Further, the focus is not upon an item's actual value, but upon what value a defendant subjectively attaches to the items received.  United States v. Williams, 705 F.2d 603, 622-23 (2 Cir. 1983).

In each of the plea agreements before this Court, the Executive Branch promised to advise the sentencing Court of the nature and extent of the Defendant's cooperation.  In addition, the Executive Branch promised that it "may" file a motion for downward departure or reduction in sentence if it finds the Defendant's assistance to be substantial.  It is difficult to imagine something of greater subjective value to a defendant facing incarceration than the promise of a lesser sentence. Therefore, the Court finds that the promises made by the Executive Branch to the co-Defendants clearly involve a "thing of value."

Third, the Court must find that each "thing of value" was given, offered or promised "for or because of" each co-

13

Defendant's testimony.   Under the "for or because of"
requirement, the gift, offer or promise and the testimony need
not motivate each other; there is no quid pro quo.   <u>United States
v. Sun-Diamond Growers of California</u>, 138 F.3d 961, 966 (D.C.
Cir. 1998) (construing "for or because of" language in Section
201(c)(1)).   Rather, "[t]he relation may be simply one of reward.
. . . for an act taken in the past or to be taken in the future."
<u>Id.</u>   Therefore, "a gift looking to future acts can be [unlawful]
where the giver is motivated simply by the desire to increase the
likelihood of one or more specific, favorable acts."   <u>Id.</u>

Each of the plea agreements in this matter indicates that
the respective promises of leniency were made "for or because of"
each co-Defendant's testimony.   In other words, the promise of
the Executive Branch to evaluate and advise the Court of each co-
Defendant's cooperation, including testimony, as well as the
potential for a substantial assistance motion, were rewards for
such co-Defendant's actions in the past and in the future.
Further, each plea agreement was executed prior to the trial of
the remaining Defendant, Oslet Franklin Lowery.   Obviously, the
Executive Branch was motivated to offer such promises to the co-
Defendants in order to increase the likelihood that each would
testify at trial.   Therefore, the Court finds that the plea
agreements in the instant case easily satisfy the "for or because
of" requirement.

The Court is mindful of the Executive Branch's argument that

14

a plain language approach to Section 201(c)(2) produces an absurd result. Such an argument is, however, without merit. Rather, including the Executive Branch and its leniency agreements within the reaches of Section 201(c)(2) ensures that the judicial process will remain untainted by the admission of purchased testimony. Indeed, allowing the Executive Branch to buy testimony would produce the absurd result of the Executive Branch being subject to one set of rules while the defense is subject to another. Certainly, if testimony purchased by a defendant is tainted, testimony purchased by the Executive Branch is no less tainted. The most logical construction of Section 201(c)(2), therefore, is one that prohibits all agreements for testimony, irrespective of who enters into them.

The Executive Branch further argues that prohibiting all agreements for testimony has the "absurd result" of compromising past and ongoing criminal prosecutions. The Court, then, must look for other evidence of legislative intent in order to give the terms of Section 201(c)(2) their proper scope. Upon reviewing Section 201 as a whole, as well as its legislative history, it is clear that, despite the impact upon criminal prosecutions, this Court has correctly interpreted the plain language of Section 201(c)(2).

Congress enacted the predecessor to Section 201(c)(2) in order to prohibit giving or receiving a thing of value "by . . . witnesses 'for' or 'because of' . . . testimony . . . " H.R.

Rep. No. 87-748, at 19 (1961) (discussing 18 U.S.C. § 201(h)).
Such exchanges for testimony were recognized by Congress as
having "the appearance of evil and the capacity as serving as a
cover for evil." Id. at 19.   No distinction was made, however,
between exchanges involving the Executive Branch and a witness
and those involving a defendant and a witness.   Rather, Congress
made the prohibition applicable to "whoever," including the
Executive Branch.   Cf. 18 U.S.C. § 201(c)(1).   Thus, from its
original enactment, all agreements for testimony violated Section
201(c)(2), whether made by the Executive Branch or the defense.
The fact that the courts, the Executive Branch and the defense
have not applied Section 201(c)(2) to the Executive Branch is,
therefore, wholly irrelevant to this Court's inquiry.

        While criminal prosecutions might be impacted by this
Court's ruling, this, in and of itself, is certainly not a reason
for the Court to disregard the plain words of the Statute.
Indeed, focusing solely on the current effects of a plain meaning
interpretation of Section 201(c)(2) impermissibly obscures
Congress' clear intent of prohibiting the evil of purchased
testimony.   Moreover, it is simply not the judiciary's place to
rewrite Congressional intent simply because the plain meaning of
a statute, ignored for fifty years, suddenly has profound
implications.

        In addition, to the extent that one may argue that this
Court's interpretation of Section 201(c)(2) is at odds with the

16

legislative scheme of the Statute, this argument is easily dismissed.  Section 201(c)(1) expressly excludes the Executive Branch from its reach.  Section 201(c)(2) does not.  Therefore, reading both Sections together leads to the obvious conclusion that Congress intended one Section to include the Executive Branch and the other to exempt the Executive Branch.  Why Congress chose to differentiate between these two Sections is not for this Court to surmise.  That Congress explicitly did so, however, is a clear indication that this Court has given the terms in Section 201(c)(2) their proper scope.

Further, Section 201(d) provides an exception for payment of witness fees.  18 U.S.C. § 201(d).  It is evident that because Congress made an explicit exception for such payments, under the plain language of Section 201(c)(2), such payments would otherwise have been prohibited.  Therefore, this Court's broad interpretation of the term "thing of value" is consistent with Section 201, as a whole.

In light of the foregoing, the Court finds that the Executive Branch is clearly subject to Section 201(c)(2) and that the Executive Branch's promises to the co-Defendants in this matter violate the plain language of Section 201(c)(2).


### IV.   ELEVENTH CIRCUIT PRECEDENT

Relying upon the Eleventh Circuit's decision in <u>Golden Door Jewelry v. Lloyds Underwriters</u>, 117 F.3d 1328 (11th Cir. 1997),

17

the Executive Branch insists that the plea agreements in this matter conform with Section 201(c)(2) because each agreement explicitly prohibits false testimony. In Golden Door, it was argued that a payment to a witness violated Section 201(c)(2), even though such payment was not in exchange for false testimony. Id. at 1335 n.2. (emphasis supplied). Relying upon its previous decision in United States v. Moody, 977 F.2d 1420, 1425 (11th Cir. 1992), a panel of the Eleventh Circuit summarily rejected this argument.

A careful review of both Golden Door and Moody, however, leads this Court to conclude, most respectfully, that Golden Door applied the Moody holding out of context. In Moody, a different panel of the Eleventh Circuit was faced with resolving overbreadth and vagueness challenges to Section 201(c)(2). The defendant had bribed a witness to testify in his favor and had promised more money if she had to testify again. In concluding that Section 201(c)(2) was not overly broad, the court held that the defendant's conduct was "clearly within the statute's 'legitimate sweep.'" Id. at 1424. Further rejecting the defendant's vagueness challenge, the court stated that Section 201(c)(2) "obviously proscribes a bribe for false testimony; persons of ordinary intelligence would come to no other conclusion." At no point, however, did the Moody court intimate that Section 201(c)(2) applied only to false testimony.

Notwithstanding the limited reach of the Moody holding, the

18

panel in Golden Door cited Moody for the broad proposition that Section 201(c)(2) is violated only when false testimony is involved.  The Court notes that where there are conflicting decisions between two panels of the same court, the earlier decision is presumptively correct.  See Alcorn County v. U.S. Interstate Supplies, Inc., 731 F.2d 1160, 1166 (5th Cir.1984); see also, Kent v. Baker, 815 F.2d 1395, 1400 n.3 (11th Cir. 1987).  Thus, to the extent that the Golden Door holding conflicts with Moody, the earlier decision rendered in Moody is presumptively correct and should be followed in its entirety. Therefore, consistent with Moody, the Court finds that under the plain language of Section 201(c)(2), Section 201(c)(2) applies to all testimony, whether false or truthful.

## V.   SECTION 201(c)(2) IN RELATION TO OTHER STATUTES

The Executive Branch further argues that statutes enacted subsequent to Section 201(c)(2) limit or invalidate the operation of this Section.  In particular, the Executive Branch points to Title 18, United States Code, Section 3553(e), Section 5K1.1 of the United States Sentencing Guidelines and Rule 35 of the Federal Rules of Criminal Procedure.  These statutes, referred to as the substantial assistance provisions, allow the Executive Branch to seek a downward departure or reduction in sentence based upon a defendant's substantial assistance in the investigation or prosecution of criminal matters.  Because these

19

statutes include assistance in the prosecution of a case, the Executive Branch asserts that it is not restricted by Section 201(c)(2) from making promises in exchange for testimony.

The Court is unpersuaded by this argument. It is a well-settled rule of statutory construction that a specific, narrowly drawn statute takes precedence over a more generally applicable statute. <u>Simpson v. United States</u>, 435 U.S. 6, 15 (1978); <u>Radzanower v. Touche Ross & Co.</u>, 426 U.S. 148, 158 (1976). While Sections 3553(e) and 5K1.1 and Rule 35 contemplate the more general "substantial assistance," which may include testimony, Section 201(c)(2) applies solely to testimony. Thus, Section 201(c)(2) takes precedence over the subsequent, more general substantial assistance provisions.

Further, where it appears that two statutes clash in whole or in part, it is the province of this Court "so far as [it] can by any fair construction" to reconcile the statutes to each other. <u>The Federalist No. 78</u>, at 396 (Alexander Hamilton) (Garry Wills ed., 1982). Thus, so long as two statutes are not positively repugnant, the Court must give effect to both. <u>Connecticut National Bank v. Germain</u>, 503 U.S. 249, 253 (1992) (citations omitted).

This Court is not convinced that Section 201(c)(2) and the substantial assistance provisions are in conflict, but believes they may be reconciled in the following way. The Court recognizes that there are numerous ways in which a defendant may

offer substantial assistance both in the investigation and prosecution of a case. Testifying at trial or other proceedings is just one means by which a defendant may "substantially assist" in a case. While Section 201(c)(2) explicitly prohibits giving, offering or promising a thing of value for or because of testimony, it does not preclude a reward for all other forms of substantial assistance. Nor does it preclude a witness from testifying at trial. Thus, Section 201(c)(2) and the substantial assistance provisions may be read together to allow substantial assistance motions as rewards for all types of cooperation, excluding testimony.

## VI.   POLICY CONSIDERATIONS

As previously noted, at no time during the oral argument on this matter did the Executive Branch base its case upon the plain language of Section 201(c)(2). Instead, the Executive Branch argued that policy considerations should somehow contravene the express language chosen by Congress in Section 201(c)(2). Specifically, the Executive Branch noted that a plain reading of Section 201(c)(2) would upset the Executive Branch's settled practice of offering a reduced sentence in exchange for testimony. The Court agrees that the implications of a plain meaning interpretation of Section 201(c)(2) are serious for both the Executive Branch and the defense. Nevertheless, this factor does not excuse the Court from performing its duty of proper

21

statutory interpretation.

It is simply not this Court's Constitutional function to assume the role of a policymaker or legislator by altering the plain meaning of the statute.  Such a function lies solely with the Legislative Branch which is elected by and accountable to the people.  As the Supreme Court has correctly recognized, "[t]he remedy for any dissatisfaction with the results in particular cases lies with Congress and not with this Court.  Congress may amend the statute. [The Court] may not."  Griffin, 458 U.S. at 576 (citations omitted).

Indeed, this is the precise issue which concerned Alexander Hamilton when he wrote:

> The Courts must declare the sense of the law; and if they should be disposed to exercise WILL instead of JUDGMENT, the consequence would equally be the substitution of their pleasure to that of the legislative body.

The Federalist No. 78 at 396 (Alexander Hamilton) (Garry Wills ed., 1982).  Thus, "when a [judge] follows his personal policy predilections he is engaged in something other than the practice of constitutional law.  To a very real extent, therefore, a Court that refrains from indulging in the formulation and implementation of policy is essential to the maintenance of constitutional government."  Eugene W. Hickok, Jr., *On Federalism*, III Benchmark 229, 238 (1987).  It is imperative, therefore, that judges "identify, respect, and maintain

22

appropriate limits on judicial power . . . " Lillian R. BeVier, *Judicial Restraint: An Argument From Institutional Design*, 17 Harvard Journal of Law & Public Policy 7 (1994). Only by adhering to this philosophy will courts "govern according to the rule of law rather than whims of politics and personal preference." ROBERT BORK, THE TEMPTING of AMERICA: THE POLITICAL SEDUCTION of the LAW 318 (1990).

With these points in mind, the Court takes issue with those courts which advocate policy considerations over the plain text of Section 201(c)(2). Not surprisingly, in these days of judicial activism, there are increasing numbers of judges who either ignore the law created by the Legislative Branch or behave as though the Legislative Branch and the Judicial Branch are one. These activist judges simply disregard the plain and ordinary meaning of statutes and rules, eager to substitute their own "notions of good social policy." Lino A. Graglia, *Do We Have An Unwritten Constitution? - The Privileges Or Immunities Clause Of The Fourteenth Amendment*, 12 Harvard Journal of Law & Public Policy 83, 88-89 (1989).

For example, this practice is nowhere more apparent than in the growing list of "rights" which has inundated federal and state law. Judges have created from the most distant penumbras of the Constitution unprecedented rights or interests under the guise of "liberty" and "privacy." Such craftsmanship, however,

23

is simply intellectually dishonest and has no place in the judicial system.  Moreover, those judges who seek to advance their own agendas or pander to popular causes should have the intellectual honesty to resign from the Bench and run for public office.

Accordingly, the Court, mindful of its proper role within this Constitutional form of Government, declines the Executive Branch's invitation to heed policy considerations over the plain and unambiguous meaning of this Statute.  While the Court appreciates that its ruling herein upsets the Executive Branch's settled practices, the Court cannot rule otherwise: the Court is simply not authorized to usurp the legislative function properly left to the United States Congress.

## VII.  RULE 4-3.4(b) OF THE RULES OF PROFESSIONAL CONDUCT

Rule 4-3.4(b) of the Rules of Professional Conduct for the Florida Bar provides as follows:

A lawyer shall not:

    (b)   fabricate evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness . . .

It is the Executive Branch's position that Rule 4-3.4(b) does not proscribe offers of leniency by the Executive Branch in exchange for a witness' truthful testimony.  The Court finds this argument to be without merit.  First, there is nothing in Rule 4-3.4(b) which excludes the Executive Branch from its purview.  Second,

24

the Rule does not distinguish between truthful or untruthful testimony – all inducements for any testimony are forbidden.  <u>See</u> <u>Golden Door Jewelry Creations, Inc. Lloyds Underwriters Non-</u> <u>Marine Association</u>, 865 F.Supp. 1516, 1526 (S.D. Fla. 1994). Third, a witness has a "solemn and fundamental duty to tell the truth." <u>Id.</u>  Thus, any inducement offered by any party would undermine the administration of justice.  Lastly, Rule 4-3.4(b) does not distinguish between inducements permissible by law and inducements prohibited by law.  Thus, the Executive Branch's argument that the Supreme Court of Florida has long recognized the Executive Branch's practice of offering leniency for testimony is of no avail in interpreting this Rule.  Rather, it is apparent that all inducements, whether contrary to law or not, are precluded.  Moreover, none of the Florida cases cited by the Executive Branch addressed the prohibition against inducements found in Rule 4-3.4(b).

In light of the foregoing, the Court finds that the inducements offered by the Executive Branch to each of the co-Defendants in this matter violate the prohibition set forth in Rule 4-3.4(b) of the Rules of Professional Conduct.

The Court adds that even if this Court were to find that there was no violation of Rule 4-3.4(b), such a finding would not assist the Executive Branch.  The fact remains that the Executive Branch would still be in violation of Section 201(c)(2).

25

## VIII.  REMEDY

In the instant Motion (DE 134), Defendant Lowery moves this Court to suppress the anticipated testimony of co-Defendants Mallarino, Forero and Morino.  In response thereto, the Executive Branch contends that suppression is inappropriate as Section 201(c)(2) provides only for a possible fine and/or imprisonment for violations thereof.  Accordingly, the additional remedy of suppression should not be grafted onto the statute.

In support of its argument, the Executive Branch cites United States v. Thompson, 936 F.2d 1249, 1251-52 (11th Cir. 1991), wherein the Eleventh Circuit concluded that where "Congress specifically designates a remedy for one of its acts," courts should not read the exclusionary rule into the statute. Further, the court noted that implementing a "judicially imposed exclusionary remedy" would be disproportionate to the infraction in that case.  Id. at 1252.

Ordinarily, courts should not create a remedy where Congress has already provided one.  Nevertheless, the Court recognizes that, in this instance, strict adherence to this principle would result in there being no enforceable remedy.  That is, the Court, as a member of the Judicial Branch, cannot order the Executive Branch to investigate, prosecute and punish itself for a violation of this Section.  To do so would infringe upon the exclusive province of the Executive Branch - to execute the laws of this country.  However, "[f]ederal courts sit to enforce

26

federal law." United States v. Chemaly, 741 F.2d 1346, 1354 n. 2 (11th Cir. 1984). Therefore, there must be some means by which the Court may compel obedience to Section 201(c)(2). Accordingly, the Court is left to fashion an appropriate judicial remedy. See United States v. Calandra, 414 U.S. 338, 347-48 (1974).

Upon careful review of this matter, the Court finds that suppression of the co-Defendants' testimony is the appropriate remedy for the Executive Branch's violation of Section 201(c)(2) and to "deter future unlawful [prosecutorial] conduct." United States v. Calandra, 414 U.S. 338, 352 (1974). By the Executive Branch's own admission, making promises in exchange for testimony is a long-standing and pervasive practice in criminal prosecution. This Court cannot conceive a more effective means of deterring the Executive Branch from entering into prohibited leniency agreements than to exclude the very fruits of its efforts. Further, exclusion of the co-Defendants' testimony will eliminate any incentive on the part of the Executive Branch to defy Section 201(c)(2). Elkins v. United States, 364 U.S. 206, 217 (1960). By suppressing the ill-gotten testimony, the Court removes the sole motivation for the Executive Branch to disregard Section 201(c)(2), and compels respect for those Congressional enactments designed to preserve the integrity of the judicial system.

The Court is constrained to note that the lack of a stated

27

remedy against the Executive Branch in no way abrogates this Court's finding that the Executive Branch is subject to Section 201(c)(2). Section 201(c)(2) very clearly encompasses official misconduct, for which the appropriate and established remedy is suppression. See Unite States v. Russell, 411 U.S. 423, 430 (1973). Therefore, it was unnecessary for the explicit remedy of suppression to be spelled out in the Statute.

In addition, the Court is mindful that the Federal Rules of Evidence impose upon the judiciary an affirmative responsibility to act as a "gatekeeper" in allowing relevant testimony and evidence before a jury. See Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579, 583 (1993). Specifically, Rule 104(a) requires the Court to determine "[p]reliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence." Fed. R. Evid. 104(a). Further, Rule 403 provides as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403. Therefore, in order to preserve the integrity of the adversarial system, the Court is required to reject testimony or evidence which is so inherently unreliable that its admission would create a danger of unfair prejudice or mislead the jury. Taylor v. Illinois, 484 U.S. 400, 414 (1988).

28

For example, a trial judge has the discretion to exclude a hearsay statement or a known perjurious statement under Rule 403 where the statement is so unreliable that its probative value is "substantially outweighed by the danger of prejudice and confusion." See e.g., Precision Piping and Instruments, Inc. v. E.I. du Pont de Nemours and Company, 951 F.2d 613, 620 (4th Cir. 1991). This same reasoning applies with no less force to the instant matter.

In this case, the Executive Branch has, quite simply, purchased the testimony of the co-Defendants through promises of leniency. Each co-Defendant, therefore, has every reason to fabricate, falsify or exaggerate his testimony in an attempt to curry favor with the Executive Branch. That the respective plea agreements prohibit false testimony is of no assistance, as a defendant may fashion his testimony in such a way that it will not be false, but nor will it be truthful.

Purchased testimony is inherently unreliable and will only serve to taint and obscure the entire judicial process. Further, the Executive Branch has no protected interest in presenting such testimony at trial. Because the dangers of unfair prejudice and confusion to the jury substantially outweigh the Executive Branch's interest in presenting the testimony, the testimony is properly excluded. Therefore, the Court finds that the anticipated testimony of the co-Defendants in this matter should be suppressed.

29

## IX. CONCLUSION

The Court's finding herein, although lengthy, may be reduced to one simple principle: it is not this Court's Constitutional function to engage in legislation.  By invoking the theory that "settled expectations" demand exclusion of the Executive Branch from the reaches of Section 201(c)(2), the Executive Branch requests that this Court usurp the function properly left to the United States Congress.  Moreover, the Executive Branch's theory amounts to nothing more than this: it has always been done this way, so it must be right.  Such reasoning has never been the proper basis for a legal ruling and this Court refuses to make it the basis for one now.

Further, if, as the Executive Branch asserts, Section 201(c)(2) obviously excludes the Executive Branch, the Court feels compelled to question the need for legislation, hurriedly introduced in the wake of <u>Singleton</u> on July 15, 1998, to amend the Statute.  <u>See</u> S. 2314, 105th Cong. (1998).  By such action, Congress has reinforced the conclusion that Section 201(c)(2) presently includes the Executive Branch.

Finally, the Court notes that the testimony of cooperating witnesses and cooperating defendants is a valuable resource for law enforcement in the investigation and successful prosecution of criminal activity.  Any exclusion, however, of the Executive Branch from Section 201(c)(2) must come from the Legislative Branch, and not the Judicial Branch.  A judge's authority has

30

limits and outside those limits or designated areas, the democratic institutions govern. Thus, if any changes are to be made to Section 201(c)(2), or if more appropriate, the substantial assistance provisions, it is solely for Congress, and not for the courts or the Executive Branch, to make them.

Accordingly, after due consideration, it is

ORDERED AND ADJUDGED that the Defendant, Oslet Franklin Lowery, Jr.'s Motion To Suppress (DE 134) be and the same is hereby GRANTED.

DONE AND ORDERED in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of August, 1998.

WILLIAM J. ZLOCH
United States District Judge

Copies furnished:

David Cora, Esq., AUSA
Adalberto Jordan, Esq., AUSA

Philip Horowitz, Esq.
For Defendant Lowery

31